383 P.2d 123

Loyl R. GULLICK, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Arizona Sand & Rock Company, Respondents.

No. 7710.

Supreme Court of Arizona.

In Division.

June 27, 1963.

Minne & Sorenson, by A. D. Ward and Joe Contreras, Phoenix, for petitioner.

Donald J. Morgan, Phoenix, for respondent Industrial Commission, C. E. Singer, Jr., Lorin G. Shelley, Ben P. Marshall, Laurence Davis, and Robert D. Steckner, Phoenix, of counsel.

STRUCKMEYER, Justice.

Loyl R. Gullick, petitioner, seeks review of an award of the Industrial Commission of Arizona denying industrial benefits. Petitioner sustained an injury to his back on December 5th, 1961, while employed by Arizona Sand & Rock Company as a driver of a cement mixer truck and on the same day was admitted to a hospital for treatment. Dr. Stanford F. Hartman on December 7th, 1961 reported to the Commission a diagnosis as follows: "Acute low back strain with radiculitis of L 5 on the right."

The employer first filed a report that no notice of the injury had been given to it and as a result of this the Commission advised Dr. Hartman's office he would have to proceed on a private patient basis. Subsequently, on December 19th, 1961 the employer reported that the injury had been reported to its chief dispatcher on December 5th. Petitioner was examined by Dr. G. T. Hoffman, a neurosurgeon, on a consulting basis and he made this recommendation under date of December 9th, 1961.

"I would recommend continuation of conservative therapy and consideration will further have to be made if usual methods do not improve before any surgical procedure be instituted. The patient would most likely be better seen in group consultation. I believe that if there is orthopedic reason for fusion that the patient's nerves should be explored but I do not find enough indication at this time to consider mylography [sic] from a neurological or neurosurgical standpoint."

Thereafter, on December 21st, 1961, Dr. Hartman advised that petitioner had a great deal of pain and requested permission to perform a myelogram and surgery. Petitioner was also examined by Dr. W. S. Hunter. Doctors Hartman and Hunter performed an operation on December 22nd,

1961 resulting in a spinal fusion and a finding by the doctors his condition was a "facet syndrome L 5–S 1." Petitioner was discharged from the hospital January 2nd, 1962 and his condition proceeded with a satisfactory prognosis, all of which was reported to the Industrial Commission. Thereafter, the Commission referred the matter to a medical consultation board of five physicians. The board's report dated February 28th, 1962 recited a medical history of a back injury occurring in 1946 and:

"* * * the consultants are of the opinion the patient had a congenital anomaly of the lumbosacral spine with an instability of the lumbosacral spine which pre-existed the accident in question.

"In our opinion the patient sustained a lumbosacral strain as a result of the accident in question which, in itself, would not justify surgical intervention within two and a half weeks after the accident.

"From review of the file it is the impression of the consultants that surgery was accomplished therefor, for the pre-existing condition rather than for the lumbosacral strain, and that within 2½ weeks surgery would not commonly have been indicated in connection with the case. Further, it is felt that the care of the patient and investigation of his problem up to, and including, the myleography [sic] would be justified on an investigative basis in connection with the accident."

On March 29th, 1962, the Commission entered an award that petitioner sustained a personal injury by accident arising out of and in the course of his employment; that he was entitled to accident benefits until December 21st, 1961; that he was entitled to $202.85 temporary total disability covering the period December 6th, 1961 to March 9th, 1962; that he had been paid $1,191.79 through this period; and that he therefore was indebted to the Commission for $988.94 and that all subsequent medical treatment and disability was attributable to a pre-existing non-industrial condition. Petitioner was directed to repay to the Commission the excess sum of $988.94. On rehearing the Commission affirmed these findings and award and made two additional findings:

"1. That said applicant had an abnormality in his back which required surgery after the 21st day of December, 1961. That the findings on such operative procedure disclosed that the necessity of said surgery was not from the accidental injury and back sprain sustained on December 5, 1961 but from the longstanding prior conditions.

"2. That applicant failed to sustain his burden of proving that any of his dis-

ability for which surgery was required and the residuals thereafter were an approximate [sic] result or occasioned by the back sprain suffered on December 5, 1961 while in the service of the above-named defendant employer."

The basis of the award is the consulting board's report quoted above. However, the medical conclusions of the consultation board do not lead to the legal conclusions reached by the Commission. The legal responsibility for workmen's compensation benefits arises upon the occurrence of an injury by accident in the course of the employment and extends to the physical and mental consequences which are traceable to the accidental injury. Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627. When an injury caused by accident attributable to the employment aggravates a pre-existing physical condition or in combination with the pre-existing condition produces an injurious effect, the resulting medical, surgical and hospital or other treatment is compensable.[1]

Accident benefits are not divisible into portions but the whole thereof is included when there is a relation between the accidental injury and the treatment reasonably required. The findings of the board are that without the prior instability a lumbosacral strain in itself would not have occasioned a spinal fusion operation. Accepting this as medically conclusive, it does not support a finding that the operation was occasioned by the existing instability alone. The Commission presented no medical testimony at the rehearing. Doctors Hartman and Hunter each testified at the rehearing that in their opinion the lumbosacral strain was related to the necessity of relieving petitioner's pain by surgery.[2]

1. A.R.S. § 23–1081. Accident benefits defined
   "Every injured employee shall receive promptly medical, surgical and hospital or other treatment, nursing, medicine, surgical supplies, crutches and apparatus, including artificial members, reasonably required at the time of the injury, and during the period of temporary disability, as provided in § 23–1041. Such benefits shall be termed 'accident benefits' ".
2. Dr. Hartman testified:
   "THE REFEREE: Was his pain from the congenital condition or from a back strain he might have suffered turning the wheel of the truck, in your opinion?
   "A Well, previous to the said injury the patient had been working steadily, it is my understanding, and he did have pain following this. Therefore, I thought it was due to the accident.
   *       *       *       *       *
   "Q Then would it be correct to say that the surgery was not occasioned from any direct results of strain but for the relief of pain which came from the congenital condition, a long-existing condition?
   "MR. BLAKE: Do you understand that question? Do you want him to read it back?
   "A I was just thinking. It is my impression that he needed surgery and that the pain was due to the aggravation of this previous condition.
   *       *       *       *       *
   "A It had been known that he had these before surgery was carried out and no

Prior authorization for medical treatment reasonably held necessary by competent medical practioners is not a prerequisite to the accident benefits of the Workmen's Compensation Act. A.R.S. § 23–1081. See Paramount Pictures, Inc. v. Ind. Comm., 56 Ariz. 217, 106 P.2d 1024. Dr. Hoffman's recommendation may be in conflict with those of the other physicians. It is not unreasonable for medical practitioners to come to different conclusions. However, so long as the course of treatment followed is reasonable under all the circumstances the Commission may not require the injured employee to select another treatment at the risk of losing the benefits conferred by the Workmen's Compensation Act.

In Hamlin v. Industrial Commission, 77 Ariz. 100, 267 P.2d 736, this Court held it was not unreasonable for the workman to refuse to submit to a spinal fusion operation considered by the Commission to be

reasonably essential to promote his recovery and therefore the Commission's award which suspended his compensation by reason of such refusal was set aside. The principles stated in this opinion are equally applicable to an award terminating accident benefits. The petitioner on the facts herein had a reasonable basis for accepting the course of treatment followed. Dr. Hartman testified that his patient was in great pain, and that medication did not alleviate his condition. Dr. Hunter confirmed this. Nothing appears in the record herein that the investigative procedures undertaken were unreasonable or improper under all the circumstances. There is therefore no evidentiary basis for the Commission's award of August 3rd, 1962 denying benefits subsequent to December 21st, 1961.

The award is therefore set aside.

UDALL, V. C. J., and LOCKWOOD, concur.

surgery was carried out, but this time it was thought it was necessary.
"Q The reason for the surgery was to cure this anomaly and not to cure the strain?
"A No, sir. The surgery was done to relieve the discomfort by a fusion in this area.
* * * * *
"Q Was the operation and subsequent treatment necessitated by the accident or by a pre-existing condition?
"A The subsequent treatment was followed up because of the surgery, which

I thought was necessary for the accident."
Dr. Hunter testified:
"Q Do you concur with Dr. Hartman's opinion of 5–25–62 that the symptoms and injuries were definitely related to the injury of 12–5–61?
"A I do.
* * * * *
"A The surgery was done directly to relieve the symptoms which resulted from the accident."