389 P.2d 118

Ernest W. ADKINS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and L. P. McCrite and R. C. Beauchamp & Company, Respondents.

No. 7570.

Supreme Court of Arizona.

En Banc.

Jan. 30, 1964.

Rehearing Denied March 17, 1964.

H. S. McCluskey, Phoenix, for petitioner.

Donald J. Morgan, Phoenix, for respondent Industrial Commission of Arizona, Edward E. Davis, C. E. Singer, Jr., Lorin G. Shelley, Ben P. Marshall, and Laurence Davis, Phoenix, of counsel.

Twitty, Sievwright & Mills; Evans, Kitchel & Jenckes; Fennemore, Craig, Al-

len & McClennen; Robinette & Ladendorff; Jennings, Strouss, Salmon & Trask; Snell & Wilmer; Gust, Rosenfeld & Divelbess; Ryley, Carlock & Ralston, Phoenix, Boyle, Bilby, Thompson & Shoenhair; Robertson, Childers, Burke & Drachman; Darnell, Holesapple, McFall & Spaid, Tucson, Z. Simpson Cox, Kenneth B. Biaett, L. Dennis Marlowe, Carl W. Divelbiss, Alan K. Polley, John F. Sullivan, Charles B. Tanner, Champe Raftery, Allan J. Stanton, Jack H. Laney, Kenneth S. Scoville, Jack Choisser, Douglas O. Peterson, Elizabeth A. Stover, Jack C. Cavness, Richard Minne, Harold E. Whitney, Lester L. Penterman, Alfred S. Cox, Marion R. Smoker, Dix W. Price, J. Frank Gibson, L. J. Cox, Jr., Phoenix, George Song, Vincent J. Zepp, Scottsdale, amici curiae.

STRUCKMEYER, Justice.

This is an appeal by certiorari from an award of the Industrial Commission denying petitioner Ernest W. Adkins compensation for total permanent disability. Petitioner has a long history of industrial accidents of which the material facts are these: In 1947, petitioner sustained an injury diagnosed as sacroiliac strain. The Commission eventually determined a 15% general physical functional disability and a 20% loss of earning capacity. In 1959, petitioner while employed as a diesel mechanic and welder suffered another injury to his back and by decision of the Commission dated April 15, 1960, was awarded temporary disability benefits. Subsequently, a petition to reopen the award of 1960 was filed asserting that petitioner had "become disabled to continue any regular work due to the pain in the lower part of my back and my left leg and foot". The Commission made a determination that petitioner had new additional or previously undiscovered disability attributable to the 1959 injury. He was hospitalized and examined on a number of occasions by a medical consulting board and was also given psychiatric examination.

On February 26, 1962, the Commission entered its decision on rehearing and order affirming previous awards. Two findings were made which essentially are the basis of the present appeal. By finding No. 4, it was found from the evidence presented by medical experts that petitioner was capable and physically able to perform the same type of work at the present time as he was doing previous to his injury of September 7, 1959, and had no loss of earnings due to this injury. By finding No. 5, it was found that all prior awards were res judicata and that there was no evidence of new, additional or previously undiscovered disability "not heretofore compensated". Partial permanent disability compensation theretofore awarded was ordered reinstated.

In essence, it is petitioner's contention that he has been unable to work since the 1959 injury and therefore he is

entitled to compensation for *total* permanent disability. Petitioner relies on the uncontradicted testimony of his former employers that he is unable to do his former work and that he has been unable to do similar work for another employer since 1959. He also points to the testimony of one David LaForge, Vocational Counsellor for the Arizona Division of Vocational Rehabilitation, the only impartial qualified expert, who testified that it was impractical to attempt to retrain petitioner for other work. LaForge testified:

"A   My conclusion as the counsellor was that a combination of factors was such that we wouldn't be able to retrain him for any successful type of gainful employment. I was concerned, not with his disability, but with the feasibility.

"Q   With what residue he had left?

"A   That plus his education, plus the type of work he had done, plus his psychological condition, plus a number of other factors that all related together that we determine whether he would be a success in training him in some field."

On cross-examination, he said:

"Q   Was his physical disability a major factor in this conclusion?

"A   No, it wasn't, sir.

"Q   What was the major factor?

"A   It was a combination of factors. I wasn't concerned with the extent of his disability because I had worked with people who were 100 per cent disabled, and yet the other factors, their motivations and the client's attitude toward his disability as to what he is actually physically limited in, plus his education and his native capacities."

Where the evidence of a claimant is corroborated by disinterested witnesses, it may not be disregarded and the reasonable statements of unimpeached witnesses are presumed true when uncontradicted. Williams v. Williams Insulation Materials, Inc., 91 Ariz. 89, 370 P.2d 59.

It is the Commission's position that their doctors could not find any permanent physical change resulting from the 1959 injury and therefore compensation must be denied. The Commission, on rehearing, specifically found:

"4.   That this Commission finds, and evidence has been presented by medical experts, that said applicant is capable and physically able to perform the same type of work at the present time as he was doing previous to his injury of September 7, 1959, and he has no loss of earnings due to this injury."

▮   Basically the medical experts were of the opinion that the petitioner's inability to work was the result of "functional overlay". As to this, we have repeatedly held

that such medical opinions are not grounds for denying compensation. Gullick v. Industrial Commission, 94 Ariz. 237, 383 P.2d 123; Rahar v. Industrial Commission, 94 Ariz. 170, 382 P.2d 656; Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573; Vance v. Industrial Commission, 94 Ariz. 142, 382 P.2d 557; Mead v. American Smelting & Refining Company, 90 Ariz. 32, 363 P.2d 930; McAllister v. Industrial Commission, 88 Ariz. 25, 352 P.2d 359; Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627. The medical experts arrived at their opinions because they were of the view that "functional overlay is not a physical condition". We have too often rejected this medical theory of causation to require further comment.

■■ Nor may the Commission decide from the evidence of medical experts that petitioner was physically able to perform the same type of work at the present time as he was doing previous to his injury. It has long been the rule in this state that medical evidence is not competent for this purpose. Medical evidence goes only to the physical injury and not as to how that affects earning capacity. Phelps Dodge Corp., Morenci Branch v. Industrial Commission, 90 Ariz. 379, 368 P.2d 450, 451; Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160. The causal relationship between the injury and resulting disability may be the subject of medical testimony. Paulley v.

Industrial Commission, 91 Ariz. 266, 371 P.2d 888. But a medical expert is not ordinarily qualified by experience to state an opinion as to whether a claimant with his present disabilities is able to carry out the skills of a particular job—such as here, a diesel mechanic and welder.

Petitioner accepted the award of the Commission dated April 15, 1960, and attempted to continue with his usual employment but found that he was too disabled to continue any regular work. It is the Commission's position that since there was no subsequent change in petitioner's physical condition affecting his earning capacity it does not have the authority to readjust the amount which now represents petitioner's reduced monthly earnings. This brings the Court face to face with the asserted unconstitutionality of A.R.S. § 23–1044, subd. F.

■ In 1925, the Seventh Legislature passed the present Workmen's Compensation Act in substantially its existing form. The same year there was referred to the people a proposed constitutional amendment apparently for the reason that previous legislation had been held unconstitutional. See Industrial Commission of Arizona v. Crisman, 22 Ariz. 579, 199 P. 390. The constitutional amendment was approved by the people at the next general election and is presently Article 18, § 8, Arizona Constitution,

A.R.S. Later the procedure used was approved and the constitutionality of the legislative act in general upheld in Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658, and Red Rover Copper Co. v. Industrial Commission, 58 Ariz. 203, 118 P.2d 1102, 137 A.L.R. 74.

Article 18, § 8 provides:

"The Legislature shall enact a Workmen's Compensation Law applicable to workmen * * *.

"The percentages and amounts of compensation provided in House Bill No. 227 enacted by the Seventh Legislature of the State of Arizona, shall never be reduced * * * except by initiated or referred measure as provided by this Constitution. * * *"

Article 18, § 8 is not alone a constitutional directive to the legislature for future action. It is in part a ratification and adoption into the constitution of a specific bill already enacted by the legislature. Accordingly, the legislative act and the constitutional measure must be construed together. Red Rover Copper Co. v. Industrial Commission, supra. By the constitutional prohibition against a reduction in the percentages and amounts of compensation set forth in House Bill No. 227, the percentages and amounts have become those to which claimants are entitled and will continue to be entitled until reduced by initiative or referendum.

The legislature, in 1953, added A.R.S. § 23–1044, subd. F in this language:

"For the purposes of subsection C [non-scheduled injuries] of this section, the commission shall, not later than nine months from the time the physical condition of the injured employee becomes stationary, determine the amount which represents the reduced monthly earning capacity, and upon such determination make an award of compensation which shall be subject to change only in the event of a subsequent change in the physical condition of the injured employee resulting from the injury and affecting his earning capacity."

This section requires that when the physical condition of an injured employee becomes stationary the Commission shall determine the amount which represents his reduced earning capacity and permits a change thereof only in the event that there has been a change in the physical condition of the injured employee.

Prior to the enaction of subsection F, if there occurred a change affecting earning capacity as a result of existing disability, an injured workman could apply to the Commission and be awarded compensation

in an amount as his diminished earning capacity warranted. Engle v. Industrial Commission, 77 Ariz. 202, 269 P.2d 604; Lee v. Industrial Commission, 71 Ariz. 171, 224 P. 2d 1085; London v. Industrial Commission, 71 Ariz. 111, 223 P.2d 929.

■ The provision of subsection F permitting a readjustment of an award of compensation "only in the event of a subsequent change" in physical condition reduces the amount of compensation to which an injured workman might otherwise have been entitled under House Bill No. 227. It has the effect of decreasing the amount due a claimant under the prior act by withdrawing from the Commission the right to consider matters affecting the workman's earning capacity after a nine-month period. As such, it conflicts with Article 18, § 8, Arizona Constitution, in reducing the amount of compensation payable to claimants without having been submitted as an initiated or referred measure.

The legislature is, of course, not wholly powerless to amend the original act. Benefits can be increased and procedures may be changed. We have, however, said that the 1953 Amendment is substantive and not procedural, refusing to give it retroactive effect. Gallo v. Industrial Commission, 83 Ariz. 392, 322 P.2d 372.

The Commission argues that the 1953 Amendment, subsection F, was simply a statutory adoption of the existing law laid down in Radaca v. United States Smelting, Refining & Mining Co., 62 Ariz. 464, 158 P.2d 540. The Commission misinterprets that case. It held that the Commission had continuing power over its awards upon the showing of additional and new disability [injuries] attributable to the accident not shown at the original hearing and which could not have been considered in making a prior award. But whatever may be its proper interpretation, three years later in 1949 in Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217, on rehearing, this Court held:

"That the commission retains jurisdiction of all compensation cases for the purpose of altering, amending, or rescinding its findings and awards at the instance of either the workman, the insurer or the employer (a) upon showing a change in the physical condition of the workman subsequent to said findings and award arising out of said injury resulting in the reduction or increase of his earning capacity; (b) upon a showing of a reduction in the earning capacity of the workman arising out of said injury where there is no change in his physical condition, subsequent to said findings and award; (c) upon a showing that his earning capacity has increased subsequent to

said findings and award." 69 Ariz. 180, 211 P.2d 231.

Thereafter, the legislature could not have been any misconception as to the state of the law in 1953 when it adopted subsection F. Subsection F, in effect, preserved section (a) of the above quoted holding in the Steward case and, in effect, deleted sections (b) and (c). As such it reduces the amount of compensation due in all those cases where the claimant's earning capacity rather than his physical condition is the determining factor. Under the plain language of Article 18, § 8, Arizona Constitution, this is precisely what the legislature cannot do. Subsection F of A.R.S. § 23–1044 is unconstitutional and void.

■ This case must be considered by the Commission under the principles laid down in the Steward case in 1949, as a case in which there was a showing of a reduction in earning capacity although there is no change in the workman's physical condition subsequent to the award. What we have said here requires a reconsideration by the Commission of Adkins' present status in the light of the evidence introduced at the last hearing.

The award is set aside.

UDALL, C. J., LOCKWOOD, V. C. J., and BERNSTEIN and JENNINGS, JJ., concur.